UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **MINNIE WILLIAMS SMITH** | **CASE NO. 3:19-CV-0595** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **ANDREW SAUL, COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

On April 14, 2017, Minnie Smith filed the instant application for Title II Disability Insurance Benefits. (Tr. 16, 150-152, 154-155). She alleged disability as of February 6, 2017, because of post-traumatic stress disorder ("PTSD"), traumatic brain injury, back injury, right-hand injury, depression, anxiety, high blood pressure, vision issues, and sleep apnea. (Tr. 182, 186). The state agency denied the claim initially and upon reconsideration. (Tr. 66-84, 88-91, 93-94, 98). Thereafter, Smith requested and received a June 1, 2018, hearing before an Administrative Law Judge ("ALJ"). (Tr. 33-65). In a July 6, 2018, written decision, the ALJ determined that Smith was not disabled under the Social Security Act, finding at step two of the sequential evaluation process that her medically determinable impairment(s) was not severe. (Tr. 13-22). Smith appealed the adverse decision to the Appeals Council. On April 9, 2019, however, the Appeals Council denied Smith's request for review; thus, the ALJ's decision

became the final decision of the Commissioner. (Tr. 1-3).

On May 7, 2019, Smith filed the instant, pro se complaint for judicial review of the Commissioner's final decision. Following submission of the administrative transcript and supporting memoranda, the matter is now before the court.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

    (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

    (2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

    (3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

    (4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis;

under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. The ALJ's Decision

The ALJ determined at step one of the sequential evaluation process that the claimant had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 18). She further found that the claimant had a medically determinable impairment of depression. *Id*. However, the ALJ concluded her analysis at step two of the sequential evaluation process by finding that the claimant did not suffer from a severe impairment that either significantly limited or was expected to significantly limit, her ability to perform basic work-related activities for a consecutive 12-month period. (Tr. 18-21).

### II. Discussion

Plaintiff, who was 63 years old[1] and still working at the time of her alleged disability onset date, attributes her disability to a February 6, 2017, attack by her adult son. *See* Tr. 40-48. She alleged that she was hit in the head and on the back of her hand with an iron object causing her to suffer blurred vision, a concussion, memory loss, headaches, difficulty concentrating, PTSD, insomnia, anger management issues, muscle spasms in her back, a problem with her right leg, and right hand impairment. *Id*. Plaintiff maintains that the effects of these impairments

---

[1] She was 64 at the time of the hearing.

were ongoing and extended at least through the date of the ALJ's decision.

Although plaintiff's allegations regarding her impairments might well be correct, that is not the issue before this court. The question this court must answer is whether the Commissioner's determination that plaintiff was not disabled is supported by substantial evidence and free of legal error. The court reiterates that the ALJ decided this matter at step two of the sequential evaluation process, i.e., she determined that plaintiff had no severe impairment that limited or was expected to limit plaintiff's ability to engage in work-related activities for a consecutive 12-month period. In assessing the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.1985)).

Here, the chronology of plaintiff's medical treatment records provides substantial evidence to support the Commissioner's determination. On February 6, 2017, Smith went to the emergency room following her assault. (Tr. 266-270). She reported pain and tenderness to her left face and right hand, plus brief loss of consciousness. *Id.* She was diagnosed with blunt head trauma with loss of consciousness, facial contusion, and right-hand sprain/pain. *Id.* She was prescribed Norco and ibuprofen for muscle spasms. *Id.* A CT scan of the head and spine was negative. (Tr. 266-273).

On February 13, 2017, Smith went to the emergency room with complaints of head injury. (Tr. 276-278). She complained of headache pain to the left occipital area. *Id.* At its worst, the pain was moderate. *Id.* She had 5/5 motor strength in all extremities, with a full range of motion. *Id.* She was diagnosed with post-concussion syndrome. *Id.*

5

On February 15, 2017, plaintiff saw Mohan Deochand, M.D., for re-check of acute concussion. (Tr. 285-291). Smith felt dizzy, with left blurred vision. *Id.* She had a grade II concussion. *Id.* Her back pain had lessened with medication. *Id.* Amnesia persisted for five minutes. *Id.* She saw an optometrist who found that her vision was 20/20. *Id.* She had constant, sharp, dull, and aching headaches. *Id.* Her symptoms were described as moderate. *Id.* She experienced daily pain that radiated to her lower back, and bilateral legs. *Id.* She had no psychiatric symptoms. *Id.* She had 5/5 strength in all muscles. *Id.* Deochand diagnosed benign hypertension, headaches, and low back pain. *Id.*

A February 17, 2017, MRI of the brain showed chronic changes, but no acute process. (Tr. 279). A February 29, 2017, EMG/NCS study of the lower limbs was normal. (Tr. 292).

On March 1, 2017, plaintiff saw Anita Wilborn, M.D., for follow-up for head injury, hypertension, and memory loss. (Tr. 431-434). Her memory loss was mild in severity. *Id.* She was negative for dizziness, headaches, anxiety, and depression. *Id.* She was positive for back pain. *Id.*

Smith saw Dr. Wilborn again on March 30, 2017. (Tr. 426-430). She had complaints of hypertension, blurry vision, anxiety, and back pain. *Id.* She received a referral for neurology. *Id.*

Plaintiff returned to Dr. Wilborn on April 27, 2017. (Tr. 422-425). She was diagnosed with essential primary hypertension, PTSD, major depressive disorder, and adjustment insomnia. *Id.* She was advised not to go back to work at that time. *Id.*

On May 10, 2017, plaintiff's ophthalmologist, Lauren Rosecan completed an attending provider statement in which she opined that plaintiff could resume all normal activities. (Tr. 360, 371). She also indicated that she was fully healed as of March 8, 2017. *Id.*

On May 25, 2017, plaintiff saw Dr. Wilborn for follow-up for depressive disorder, benign essential hypertension, and mild memory disturbance. (Tr. 418-421). Her depression was related to her PTSD. *Id*. She had insomnia, anxiety, and uncontrolled crying. *Id*. Her recent memory was abnormal. *Id*. She had normal strength in her upper and lower extremities. *Id*. She was diagnosed with benign hypertension, mild memory disturbance, blurring of visual image, depressive disorder, and obesity. *Id.*

On July 12, 2017, plaintiff was seen by neurologist, Sonia Canaves-Nunez, M.D. (Tr. 314-320). Smith complained of headaches, fatigue, and right-hand weakness. *Id.* She reported daily headaches, sensitivity to lights, nausea, and vomiting. *Id.* However, her neurological and motor examination essentially were normal. *Id.* She was to return for an EMG/NCS of the upper extremities. *Id.*

On July 27, 2017, plaintiff returned to Dr. Canaves-Nunez. (Tr. 326-331). EMG/NCS of the upper extremities showed mild right ulnar sensory neuropathy and weak muscles of the right forearm, hand that might stem from history of local trauma. *Id.*

Plaintiff returned to Dr. Wilborn on August 25, 2017, for follow-up for benign essential hypertension. (Tr. 413-418). Smith reported daily, bilateral headaches that were an eight on a ten-point scale. *Id.* She had normal strength in her upper and lower extremities. *Id.* Wilborn diagnosed Smith with benign essential hypertension, headaches, which were being treated by a specialist, obesity, and PTSD, which was being treated by a specialist. *Id*.

Smith returned to Dr. Wilborn on September 1, 2017. (Tr. 405- 408). Smith reported no headaches and was not in acute distress. *Id.* She had normal strength in her upper and lower extremities. *Id.* Wilborn assessed Smith with stable blood pressure, hypertension, and obesity. *Id.*

On October 25, 2017, plaintiff was seen by nurse practitioner Ronsheka Palmer for hypertension. (Tr. 346-351). Smith had no symptoms of sleep pattern changes, anxiety, or difficulty focusing. *Id*. However, she had occasional feelings of stress when she thought about the assault in February 2017. *Id*. Smith was diagnosed with hypertension. *Id.*

On November 9, 2017, Smith returned to nurse practitioner Ronsheka Palmer for lab results follow-up. (Tr. 337-341). She had no symptoms of depression or anxiety. *Id*. She was diagnosed with diabetes mellitus, without complications. *Id.*

On December 14, 2017, plaintiff was seen by nurse practitioner Felicia White for diabetes and blood pressure check-up. (Tr. 332-336). She had no symptoms of back pain, headaches, weakness, or memory loss. *Id*. White diagnosed hypertension and diabetes mellitus. *Id.*

On December 19, 2017, plaintiff saw clinical therapist Andreaietta Brown. (Tr. 453-457). Smith reported that she had been struggling with withdrawal. *Id*. She only slept about four hours each night and ate once daily. *Id*. She experienced symptoms on a weekly basis, that resulted in impairments in daily functioning and social isolation. *Id*. Nonetheless, her ability to concentrate, maintain attention, recent and remote memory, abstract reasoning, and judgment/insight all appeared to be within normal limits. *Id*. She had a good fund of knowledge. *Id*. She had some functional limitations in basic living skills. *Id*. However, she had no limitations in social functioning. *Id*. She was diagnosed with PTSD. *Id.*

On January 8, 2018, therapist Brown noted that plaintiff had been having some flashbacks and nightmares. (Tr. 451-452). However, she recently had finished her book and sent it off for publication. *Id*. Moreover, assessment of all areas, including sleep and appetite, was within normal limits. *Id.*

8

On January 23, 2018, plaintiff returned to nurse practitioner Felicia White. (Tr. 470-472). She had no symptoms of fatigue, headaches, loss of appetite, sleep disturbance, or changes in weight. *Id.* She also had no headaches or memory loss, and no musculoskeletal symptoms. *Id.* White diagnosed Smith with hypertension, type 2 diabetes mellitus, and allergic rhinitis. *Id.*

On January 29, 2018, plaintiff saw clinical therapist, Andreaietta Brown. (Tr. 449-450). Although plaintiff's mood was depressed, assessment of all other areas was within normal limits. *Id.* Brown indicated that Smith was making poor progress. *Id.*

On January 31, 2018, plaintiff was examined by Ajay Acharya, M.D. for completion of social security paperwork. (Tr. 461-465). She reported no headaches or blurred vision. *Id.* Her diabetes was well-controlled with exercise. *Id.* She had no headaches or memory loss. *Id.* She also had no back pain, joint pain, muscle pain, or psychiatric symptoms. *Id.* Her right upper extremity was normal. *Id.* Visual acuity and visual fields were normal. *Id.* Strength and sensation of upper and lower extremities were normal. *Id.* Her recent and remote memory were intact. *Id.* Dr. Acharya diagnosed Smith with essential primary hypertension and type 2 diabetes mellitus without complications. *Id.*

In her decision, the ALJ relied on the opinions of a total of four non-examining agency physicians and psychologists, who reviewed the record between June and August 2017, but opined that plaintiff had no severe impairment. *See* Tr. 70-72, 79-81.

Subsequent medical treatment records, while by no means uniform, do not indicate a subsequent deterioration of plaintiff's condition. Indeed, Dr. Acharya's findings in January 2018, were benign. Similarly, although plaintiff presented to the clinical therapist as depressed, with attendant limitations in living skills, all of her functional abilities appeared to be within

9

normal limits.

Plaintiff contends that the ALJ failed to consider the effects of her diabetes, hypertension, and obesity. However, the treatment records do not reflect any limitations from these conditions. Plaintiff also faults the ALJ for omitting any discussion regarding the side effects from her medication. However, plaintiff's medical treatment records do not reflect side effects from medication. (Tr. 406, 415, 420). Moreover, plaintiff admitted in her disability paperwork that she did not have any side effects from her medication. (Tr. 213).

Finally, plaintiff argues that the ALJ neglected to credit the testimony of the vocational expert. However, vocational expert testimony is only relevant at steps four and/or five of the sequential evaluation process. Here, of course, the ALJ found plaintiff not disabled at step two.

## Conclusion

The ALJ in this case was tasked with determining whether the claimant was disabled. In so doing, she considered the hearing testimony, the medical records, and expert opinion evidence. The evidence was not necessarily uniform, and according to plaintiff, should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). **The court emphasizes that it may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."** *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). The limited and lone issue before the court is whether the Commissioner's determination that plaintiff was not disabled under the Social Security Act is supported by substantial evidence and free of legal error. Upon review, the court is satisfied that the Commissioner's decision meets these requirements. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 2nd day of March 2020.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE